UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    Ramiz Saric & Sahiza Saric,

                                  Chapter 7
                                  Case No.: 12-60936

                     Debtors.

Hon. Diane Davis, U.S. Bankruptcy Judge

## Memorandum-Decision and Order

On August 27, 2012, Ramiz and Sahiza Saric ("Debtors") filed a motion asking the Court to void the lien of Beneficial Finance Company ("Beneficial"), a junior mortgagee, on the basis that there is no equity in the collateral to secure Beneficial's claim (the "Motion," ECF No. 26). In the Motion, Debtors contend that the Court should grant the relief requested in accordance with the reasoning of the Second Circuit Court of Appeals in *Pond v. Farm Specialist Reality* (*In re Pond*), 252 F.3d 122 (2d Cir. 2001). On September 18, 2012, the Court directed Debtors to submit a memorandum of law in support of the Motion. Debtors submitted their memorandum on November 8, 2012 (ECF No. 32), in which they argued that the Court should grant the relief requested pursuant to 11 U.S.C. §§ 502(b)(9), 506(a) and (d), and, once again, *In re Pond*.[1] The Court heard further oral argument on November 12, 2012, at which time the Court took the matter under submission. Debtors properly served and noticed the Motion, but Beneficial did not appear in the matter. For the reasons stated below, the Court denies the Motion.

---

[1] Unless otherwise indicated, all further section references herein relate to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2010) (the "Code").

### Jurisdiction

The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334. This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).[2]

### Facts

Debtors filed their petition for chapter 7 bankruptcy relief on May 18, 2012. Debtors own their residence located at 1125 Leeds Street, Utica, New York (the "Property"). There are two consensual liens on the Property. HFC holds a first mortgage lien with a balance of $42,083.65. Beneficial holds a junior mortgage lien with a balance of $19,369.29. Debtors value their residence at $40,000 based on an appraisal dated December 8, 2011.

### Debtors' Arguments

Debtors make three arguments in support of their effort to void Beneficial's junior mortgage lien. First, Debtors take the position that Beneficial's mortgage lien does not secure a claim against the principal residence that is an "allowed secured claim" under § 506(d) because based on Debtors' appraisal valuing the real property at $40,000, the claim is wholly unsecured pursuant to § 506(a). Second, Debtors contend that the facts of this case are distinguishable from those cases that disallow the stripping off of a wholly unsecured mortgage lien in a chapter 7 because Beneficial does not hold an allowed claim under §§ 502(a) and 502(b)(9).[3] Section 506(d) does not have an exception for claims that are disallowed as not timely filed by virtue of

---

[2] It is well-settled that a debtor may use motion practice when attempting to strip off an unsecured mortgage lien; an adversary proceeding is unnecessary. *See, e.g.*, *In re Robert*, 313 B.R. 545, 549-50 (Bankr. N.D.N.Y. 2004) (adopting the majority view that lien avoidance under § 506 is the inevitable byproduct of valuing a claim, which is accomplished by motion pursuant to Federal Rule of Bankruptcy Procedure 3012; Federal Rule of Bankruptcy Procedure 7001 is not triggered because the validity, priority, and extent of the lien are not implicated when a debtor seeks to declare a lien void on the basis that the collateral is valued at zero).

[3] Lien stripping commonly takes two forms. "Stripping down" refers to a debtor's attempt to void the unsecured portion of a lien when there is some equity in collateral available to secure a debt owed to a lienholder, but not enough to secure the entire debt. "Stripping off" refers to a debtor's attempt to void an entire lien when there is no equity in the collateral available to secure a debt owed to a lienholder. *Ryan v. Homecomings Fin. Network*, 253 F.3d. 778, 781 n.3 (2d Cir. 2001). Here, Debtors seek to do the latter.

an objection under § 502(b)(9). According to Debtors, because Beneficial did not file a proof of claim, it does not hold an allowed claim. Debtors therefore assert the Court should void Beneficial's lien using § 506(d). Third, Debtors argue this Court should extend the Second Circuit's holding from *In re Pond,* a chapter 13 case, to the facts of this chapter 7 case.

## **Discussion**

Debtors' first argument for voiding Beneficial's lien—that Beneficial's mortgage is not an "allowed secured claim" under § 506(d) because an analysis to determine Beneficial's secured status under § 506(a) would result in a finding that Beneficial holds a wholly unsecured claim—requires the Court to decide whether a chapter 7 debtor may use § 506(d) to strip off the lien of a junior mortgagee, when the debtor still owes a senior mortgagee an amount that exceeds the value of the secured property. In pertinent part, § 506 provides:

> (a) An allowed claim of a creditor, secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim.
> . . . .
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title, or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506.

In *Dewsnup v. Timm*, 502 U.S. 410, 413 (1992), the Supreme Court was faced with a similar question when a chapter 7 debtor sought to strip down a consensual first mortgage lien against her real property to the fair market value of the collateral. There, the Supreme Court focused on the interplay of §§ 502 and 506(a) and (d). Section 502(a) states, "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest

. . . objects." 11 U.S.C. § 502(a). The Supreme Court interpreted the words "allowed secured claim" in § 506(d) term-by-term, and concluded the language refers to "any claim that is first, allowed under § 502, and second, secured." *Dewsnup v. Timm*, 502 U.S. 410, 415 (1992). The value of the creditor's interest in the estate's interest in the underlying collateral as determined pursuant to § 506(a) was irrelevant under the Court's reading of §506(d)'s "allowed secured claim" language. *See id.* The creditor's interest could have had no value, but the creditor would still have had an "allowed secured claim" as the term is used in § 506(d) because the claim was "secured by a lien with recourse to the underlying collateral." *Id.*; *In re Cook*, 432 B.R. 519, 528-29 (Bankr. N.J. 2010), *aff'd*, *Cook v. IndyMac Bank, FSB (In re Cook)*, 449 B.R. 664 (D.N.J. 2011) ("*Dewsnup* held that the definition of an 'allowed secured claim' for purposes of § 506(d) was independent of the § 506(a) determination."). Accordingly, the Court held that the debtor could not use § 506(d) to strip down the lien "because [the creditor's] claim [was] secured by a lien and [had] been fully allowed pursuant to § 502." *Id.* at 417. The Supreme Court reasoned:

> The practical effect of [the debtor's] argument is to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale. The increase would accrue to the benefit of the debtor, a result some of the parties describe as a 'windfall.'
>
> We think, however, that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.

*Id.* As a matter of policy, the Supreme Court stated that it could not "attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they

become 'unsecured' for purposes of section 506(a) without the new remedy being mentioned somewhere in the Code itself or in the annals of Congress." *Id.* at 419-20. The Supreme Court espoused to do so would be contrary to basic bankruptcy principles, including that apart from reorganization proceedings, no provision of the pre-Code bankruptcy statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than the payment on the debt and that liens on real property pass through bankruptcy unaffected. *Id.* at 417-19.

The Supreme Court did not decide in *Dewsnup* whether a chapter 7 debtor may strip off the lien of a wholly unsecured junior mortgagee pursuant to § 506(d), and this issue remains an open question in the Second Circuit and a matter of first impression in the Northern District of New York. The majority of courts that have considered this issue have concluded that such use of § 506(d) is impermissible. *See Talbert v. City Mortg. Servs. (In re Talbert)*, 344 F.3d 555, 559 (6th Cir. 2003) (rejecting the minority position and declining to allow a chapter 7 debtor to strip off the lien of a junior mortgagee); *Ryan v. Homecomings Fin. Network*, 253 F.3d. 778, 781-82 (4th Cir. 2001) (same)*; Wachovia Mortg. v. Smoot (In re Smoot)*, 478 B.R. 555, 568 (E.D.N.Y. 2012) (same); *In re Cook*, 432 B.R. 519, 525 (Bankr. N.J. 2010), *aff'd*, *Cook v. IndyMac Bank, FSB (In re Cook)*, 449 B.R. 664 (D.N.J. 2011) (holding the same and noting, "[p]ost *Dewsnup* . . . the majority of courts addressing the issue . . . [conclude] that . . . a 'strip off' and a 'strip down' . . . both . . . are foreclosed by *Dewsnup*.") (internal citations omitted). *But see McNeal v. GMAC Mortg., L.L.C.* (*In re McNeal*), 477 F. App'x 562, 563 (11th Cir. 2012) (following pre-*Dewsnup* Eleventh Circuit precedent permitting strip off in chapter 7 because under the Eleventh Circuit's "prior panel precedent rule," a later panel could depart from an earlier panel's decision only when an intervening Supreme Court decision was "clearly on point,"

and having addressed strip down, not strip off, *Dewsnup* was not clearly on point with the facts at issue before the Eleventh Circuit Court of Appeals).

This Court finds the decision of the Sixth Circuit Court of Appeals in *Talbert v. City Mortgage Services (In re Talbert)*, 344 F.3d 555, 559 (6th Cir. 2003) to be persuasive on the question now before it.  In *Talbert*, the Sixth Circuit Court of Appeals, one of the highest courts to have decided this issue to date, adopted the majority view.  344 F.3d at 559.  The Court of Appeals concluded the Supreme Court's interpretation of § 506 in *Dewsnup*, as well as the three considerations serving as the analytical underpinnings of *Dewsnup's* holding—(1) any increase in the value of the property from the date of the judicially determined valuation to the time of the foreclosure sale should accrue to the creditor; (2) the mortgagor and mortgagee bargained that a consensual lien would remain with the property until foreclosure; and (3) liens on real property survive bankruptcy unaffected—applied with equal validity to a debtor's attempt to strip off a wholly unsecured mortgage lien in chapter 7.  *Id.*  Accordingly, the Court of Appeals held, "a Chapter 7 debtor may not use § 506 to strip off an allowed junior lien where the senior lien exceeds the fair market value of the real property in question."  *Id.* at 556.  This Court agrees with the majority view that a chapter 7 debtor may not strip off a valid consensual mortgage lien solely under §§ 506(a) and (d), and thus declines to adopt Debtors' reading of § 506 to strip off Beneficial's lien.

Debtors next contend that because Beneficial did not file a proof of claim, it does not have an allowed claim, and the Court therefore should void Beneficial's lien using § 506(d).[4]  In

---

[4] Debtors' memorandum of law says, "Beneficial's claim of lien must therefore be disallowed for non-appearance and lack of proof of claim pursuant to § 502(b)(9)." The Debtor's use of "non-appearance" in their memorandum is unclear and subject to multiple interpretations.  One interpretation is that Beneficial's failure to respond to the Motion and lack of appearance at the hearings are grounds for disallowing a claim under § 502(b)(9).  These, however, are not grounds for disallowing a claim under § 502(b)(9).  Rather, absent application of one of the limited exceptions within § 502(b)(9), the basis for disallowing a claim under § 502(b)(9) is filing a claim after the bar date to receive a distribution in a chapter 7 asset case or a reorganization case pursuant to a plan. Such is not the case in

support of this argument, Debtors focus on the interplay of §§ 502(a), 502(b)(9), and 506(d). As previously stated, under § 502, "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party interest . . . objects." 11 U.S.C. § 502. Debtors specifically rely upon the language of § 502(b)(9), which when read together with § 502(b)'s prefatory language, states, "if such objection is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent . . . *proof of such claim is not timely filed* . . . ." 11 U.S.C. § 502(b)(9) (emphasis added). According to Debtors, because § 506(d) does not except claims disallowed as not timely filed by virtue of a § 502(b)(9) objection and Beneficial does not have a proof of claim filed in the case, the Court should void Beneficial's lien pursuant to § 506(d). The Court disagrees with this argument on multiple grounds.

First, a plain reading of § 502 indicates that a proof of claim setting forth a creditor's claim must be filed under § 501 before an objection can be lodged against the claim under § 502. *See In re Jensen,* 232 B.R. 118, 119-20 (Bankr. N.D. Ind. 1999) ("While lateness is now a recognized reason for denying a claim, the importance of saying this in § 502(b), rather than someplace else, is that timeliness is no longer a prerequisite for allowing a creditor's claim. As the process now works, a creditor files its claim, a la § 501; then, through [§ 502], that claim is deemed allowed, unless it is objected to. Thus, even late claims are deemed allowed unless objected to. If an objection is filed, lateness is a reason not to allow the claim."). Because Beneficial does not have a proof of claim filed in this no-asset chapter 7 case, Debtors cannot object to Beneficial's claim as late filed under § 502(b)(9).

---

the matter *sub judice*. A second possible interpretation is that Beneficial had to file a proof of claim to preserve its mortgage lien. *Dewsnup*, however, makes clear that consensual liens pass through chapter 7 unaffected by a debtor's discharge, and a secured creditor need not a file a proof of claim to retain the *in rem* rights for which it bargained. *Dewsnup*, 502 U.S. at 417-18.

Moreover, § 506(d)(2) protects liens associated with claims that are not "allowed secured claims" due only to the failure of any entity to file a proof of claim under § 501. *See Palomar v. First Am. Bank (In re Palomar)*, 722 F.3d 992, 994 (7th Cir. Ill. 2013) (declining to strip off wholly unsecured mortgage lien in chapter 7 using § 506(d) when creditor did not file proof of claim); *In re Tarnow*, 749 F.2d 464, 467 (7th Cir. 1984) ("[I]n 1984 Congress enacted a new section 506(d)(2) . . . . Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 93-353, § 448(b), 98 Stat. 374. The change was intended "to make clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor." S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983)); *In re Henderberg*, 108 B.R. 407, 413 (Bankr. N.D.N.Y. 1989) ("[Section] 506(d)(2) . . . clearly mandates that the failure of a creditor to file a proof of claim does not affect its pre-petition lien."). Furthermore, proofs of claims in chapter 7 cases are generally not filed unless or until creditors receive notice that payment of a dividend appears possible. Federal Rule of Bankruptcy Procedure 3002(c)(5) even anticipates this behavior and case law recognizes it as a normal practice. *See Palomar v. First Am. Bank (In re Palomar)*, 722 F.3d at 994 (acknowledging it is not common practice for creditors to file proofs of claims in no-asset chapter 7 cases). Accordingly, Debtors' argument that Beneficial's claim is voided under § 506(d) by virtue of §§ 502(a) and (b)(9) is without merit.

Debtors third and final argument is that the Court should extend the Second Circuit's holding from *In re Pond*, a chapter 13 case, to the facts of this chapter 7 case. *See Pond v. Farm Specialist Reality* (*In re Pond*), 252 F.3d 122, 126 (2d. Cir. 2001). The Court also disagrees with this argument. In *In re Pond*, the Second Circuit Court of Appeals addressed whether the antimodification exception provided in § 1322(b)(2) protected a mortgage lien that was wholly unsecured under § 506(a). *Id.* at 125. Section 1322(b)(2) allows a debtor's chapter 13 plan to

"modify the rights of holders of secured claims, other than a claim secured only by a security interest in the debtor's principal residence, or of holders of unsecured claims . . . ." 11 U.S.C. § 1322(b)(2). The Court of Appeals concluded that in *Nobelman v. American Savings Bank*, 508 U.S. 324, 328-32 (1993), the Supreme Court clarified that, "the antimodification exception of Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the debtor's residence retains enough value—after accounting for other encumbrances that have priority over the lien—so that the lien is at least partially secured under Section 506(a)." *In re Pond, 252 F.3d* at 126; *see Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 328-32 (1993) (holding the debtor's chapter 13 plan, which proposed to make payments pursuant to the mortgage contract only up to the secured amount (plus prepetition arrearages) and to pay the unsecured portion with the remainder of unsecured creditors, did not comply with § 1322(b)(2) because the debtor's proposed treatment of the creditor would have resulted in a modification of the creditor's rights as a homestead mortgagee). Accordingly, the Second Circuit held that only "a wholly unsecured claim, as defined under Section 506(a), is not protected under the antimodification exception of Section 1322(b)(2)" and could be stripped off in chapter 13 under § 1322(b)(2). *In re Pond*, 252 F.3d at 126.

Other courts within this circuit have been asked to utilize the Second Circuit's chapter 13 *In re Pond* decision as a means to strip off wholly unsecured junior mortgage liens in chapter 7. When faced with this issue in *In re Grano*, 422 B.R. 401, 402 (Bankr. W.D.N.Y. 2010), Chief Judge Bucki rephrased the question before the court to, "does the Second Circuit's decision in *In re Pond* create an exception to the limitations on lien avoidance, as stated by the Supreme Court in [*Dewsnup*]?" Concluding that no such exception exists, Chief Judge Bucki reasoned that, "this argument overlooks the unique statutory predicate of Chapter 13. . . . *In re Pond* utilized

the authority of 11 U.S.C. § 1322(b)(2).  No parallel provision applies in Chapter 7.  Rather the holding of [*Dewsnup*] continues to bind debtors in Chapter 7." *In re Grano*, 422 B.R. 401, 403 (Bankr. W.D.N.Y. 2010); *see In re Smoot*, 478 B.R. at 564 (agreeing with *In re Grano*).

This Court agrees that *In re Pond* is unique to chapter 13 by virtue of § 1322(b)(2), a specific statutory scheme that permits lien stripping only in chapter 13 reorganizations, and chapter 7 has no counterpart that enables lien stripping in bankruptcies filed under that chapter of the Code.  Furthermore, as Judge Stong stated in *Wong v. Green Tree Servicing (In re Wong)*, 488 B.R. 357, 546 (Bankr. E.D.N.Y. 2013), "Section 506(d) does not provide an independent basis to void a lien, even where there is no value in the collateral to cover the lien, unless the claim secured by that lien has been separately disallowed under Section 502." *Wong v. Green Tree Servicing (In re Wong)*, 488 B.R. 537, 546 (Bankr. E.D.N.Y. 2013).  Since "Section 103(a) provides that Chapter 5, including Section 506, applies to both Chapter 7 and Chapter 13 . . . the limitation on the application of Section 506(d) should also apply in both chapters." *Id.*  As does chapter 13, other reorganization chapters of the Code also have their own statutory schemes for lien stripping that apply only to debtors who file under those chapters.  *See* 11 U.S.C. §§ 1123(b)(5) and 1222(b)(2).  It would be duplicative to give § 506(d) the same effect as those provisions, and "such a result is generally disfavored." *In re Wong*, 488 B.R. at 546 (internal citations omitted).  If Congress intended to permit chapter 7 debtors to strip liens when a claim is wholly unsecured or undersecured, it would have provided a statutory scheme to enable the practice in that chapter of the Code.  For these reasons, the Court declines to extend the holding of *In re Pond* to this chapter 7 case as a means to strip off Beneficial's lien.

## Conclusion

For the reasons discussed above, the Court rejects each of Debtors' three arguments. Accordingly, the Court denies the Motion. IT IS SO ORDERED.

Dated: December 12, 2013
     Utica, New York

                                    /s/ Diane Davis
                                    DIANE DAVIS
                                    United States Bankruptcy Judge